IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| SYLVIA-MARIE WADE, | ) |
| Plaintiff, | ) CIVIL ACTION NO: 2:25-cv-13699-RMG-MHC |
| vs. | ) **COMPLAINT** |
| DOUGLAS A. COLLINS, Secretary of Veterans Affairs, | ) |
| Defendant. | ) |

Comes now the Plaintiff, Sylvia-Marie Wade, by and through undersigned counsel, alleges and says unto this Honorable Court the following:

**Introduction**

1. This is an action seeking declaratory judgment, equitable relief, compensatory and punitive damages, costs, and attorney's fees for discrimination, violation of the 1964 Civil Rights Act, Title VII; the 1991 Civil Rights Act, as amended, 42 USCA 1981, as amended, 29 USC 2601 *et seq.*, as amended.

**Jurisdiction and Venue**

2. Jurisdiction of this Court is invoked pursuant to 28 USC 1331, *et seq.*, 28 USC 1343, *et seq.*, and 42 USCA 2000 *et seq.*

3. The Plaintiff has exhausted all administrative remedies in that Plaintiff secured from Defendant, a Final Agency Decision (FAD) on or about November 4, 2025. The Final Agency Decision accorded the Plaintiff the right to institute a civil action in an

1

appropriate United States District Court as related to the mixed and non-mixed claims or cause of action.

4. Compensatory and punitive damages are both sought pursuant to the 1991 Civil Rights Act, *et seq.*, as amended, as well as the 1964 Civil Rights Act, Title VII of the 1964 Civil Rights Act, Section 704(a), *et seq.*, and Section 703(a) *et seq.* of the said Act.

5. Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act and other appropriate attorney fees statutes authorized by law.

## Parties

6. The venue for this action lies in the Charleston Division of the United States District Court for the District of South Carolina because the Plaintiff, an African American female, currently resides within the County of Berkeley, State of South Carolina. Further, the Defendant, Douglas A. Collins, is the Secretary of Veterans Affairs for the United States of America and must be named as the Defendant in this action.

## Facts

7. Prior to being employed by the Defendant, the Plaintiff was serving in the United States Army as a Financial Management Technician.

8. Plaintiff's service record illustrates that the Plaintiff served with distinction during her entire tenure in the military.

9. While serving her country during operation Enduring Freedom and operation Iraqi Freedom, for a period in excess of five (5) years, the Plaintiff received an Army Good Conduct Medal, Army Commendation Medal, Army Achievement Medal, National

Defense Service Medal, Afghanistan Campaign Medal with two (2) Campaign Stars, Global War on Terrorism Service Medal, the NATO Medal, Non Commissioned Officer's Professional Development Ribbon, Army Service Ribbon, and Overseas Service Ribbon as well as four (4) Certificates of Achievement.

10. The Plaintiff, in fulfilling military obligations, served one tour of duty in Afghanistan from 2010 through 2011. During that time, the Plaintiff incurred a massive and severe traumatic brain injury during and because of an explosion perpetrated by adverse enemy combatants.

11. The Plaintiff was subsequently diagnosed, by military health care providers, with Traumatic Brain Injury (TBI). As a result, the Plaintiff was subsequently medically discharged on or about June 13, 2013, from the military because of severe Post-Traumatic Stress Disorder (PTSD) as well as TBI, among other injuries incurred and resulting from the explosion in Afghanistan. At all times relevant herein, the Plaintiff experienced manic depression, anxiety, and loss of self-worth because of the harassment, hostile work environment, retaliatory harassment, and disparate treatment levied against the Plaintiff by her first-line supervisor, Albert Nance.

12. Plaintiff was employed initially in New York, New York, by the Defendant as an Advanced Medical Support Assistant on June 29, 2015, for a period slightly more than one year. Plaintiff performed the duties that were assigned to her during that timeframe in an exemplary fashion. The Plaintiff, during that period of time, never received any disciplinary action, including but not limited to written warnings, oral warnings, or adverse actions.

13. Plaintiff was transferred to Ralph H. Johnson VA Medical Center (RHJVAMC) in October 2016. Plaintiff was promoted in October of 2019 from the position of Advanced Medical Support Assistant to Lead Medical Support Assistant. Subsequent thereto, in January of 2021, Plaintiff was promoted again, to a Staff Assistant Affiliation Coordinator with the Education Department at the RHJVAMC. Again, in January of 2022, Plaintiff was promoted to Program Analyst in Geriatrics care at the RHJVAMC. Plaintiff's performance evaluations from 2017 through 2023 were outstanding in all categories.

14. In April 2023, the Plaintiff applied for the position of Administrative Officer along with the Defendant's employee, Albert Nance. The Plaintiff was not selected for the said position, but Albert Nance was.

15. Almost immediately after being selected to the position of Administrative Officer, the Defendant's employee, Albert Nance, began to engage in a campaign to harass and create a hostile work environment for the Plaintiff. Before filing the present Complaint, the Plaintiff filed an EEOC Complaint in December 2023, for hostile work environment and reprisal, in which she alleged that Nance was the principal perpetrator. The Agency Case Number for that Complaint is 200I-534-2024-155577.

16. In October 2024, the Plaintiff received a Final Agency Decision (FAD) that was adverse to the latter. The Plaintiff asserts that after receiving the Final Agency Decision on the previous complaint of harassment, hostile work environment, and reprisal, the Defendant's agent, Nance, became more emboldened in levying harassing conduct against the Plaintiff by creating a hostile work environment. The hostile work environment and harassment became so severe, it caused the Plaintiff to seek medical treatment from her psychiatrist as well as a mental health care provider. Plaintiff was

advised on multiple occasions by the psychiatrist to take leave from her duties because of said harassment and hostile work environment perpetrated principally against the Plaintiff by the Defendant's agent, Nance. The Plaintiff asserts that the conduct of Mr. Nance towards the Plaintiff on this and other occasions, she entertained thoughts of homicidal ideation.

17. On multiple occasions, the Plaintiff complained to her psychiatrist that she wanted to seek employment elsewhere because the continuous harassment, hostile work environment, and retaliation were causing a deterioration in the Plaintiff's mental capacity, fearing a triggering of the PTSD and/or adverse consequences from the TBI.

18. In December of 2023, Plaintiff, after conferring with the EEOC counselor and her psychiatrist, initiated an effort to secure a transfer from the position she occupied so as to create a more hospitable work environment. Plaintiff made repeated attempts for a transfer through her second-line supervisor, the Human Resources Department directly, and the EEOC coordinator, Ms. Edmunds, all the while the unreasonable and hostile work conditions imposed upon the Plaintiff were worsening. Plaintiff, after receiving no response from any of the Defendant's employees hereinabove mentioned, contacted, on two (2) separate occasions, the PENTAD[i] regarding securing a transfer from her intolerable working conditions. She never received a response from any individual hereinabove-mentioned or the PENTAD.

19. That at all times relevant herein, the Defendant's employee, Nance, the Plaintiff's first-line supervisor, did not have the certification(s) as required by the Veteran's Administration Handbook 7403 to perform the duties of a Contracting Officer Representative. Further, at all times relevant herein, the Defendant's employee, Nance,

position description specifically assigned and mandated that he, Nance, would engage in duties of a Contracting Officer's Representative.

20. The Defendant's employee, Nance, who was the Plaintiff's supervisor, continuously assigned the Plaintiff duties that were outside of and not a part of her position description. In fact, those duties that were being assigned to the Plaintiff were duties that were supposed to be performed by the Plaintiff's supervisor, Nance, in that they were specifically set out in Nance's position description. For example, in part, the Defendant's employee, Nance, duties consisted of, as set out in his position description under the section styled procurement and contracting management, *"serves as a contracting officer's representative (COR) for procurement that requires varying approaches. Initiates and prepares contract to secure adequate resources to facilitate operations to include determining appropriate costs, performing cost analysis, soliciting bids, writing sole source justification, and communicating both orally and in writing with contracting officers and contractors."*

21. The Defendant's employee, Nance, continuously, every week, verbally and through emails, demanded and harassed the Plaintiff about performing duties such as those mentioned above that were not in her position description. This conduct continued up until the time the Plaintiff felt forced to resign to take a lower-paying position because of the mental trauma, and on the advice of her psychiatric health care provider.

22. For example, in April of 2022, when the Plaintiff was hired at the Defendant's facility, she was granted reasonable accommodations that allowed her to work remotely during regular work hours, that is, 7:00 a.m. to 3:30 p.m., because of her post-traumatic stress disorder. The Plaintiff asserts that on or about April 7, 2022, Dr. Lake knew of the

6

Plaintiff's post stress traumatic syndrome to the extent that when the Plaintiff applied for reasonable accommodation, it was disclosed that the Plaintiff suffered from the above-mentioned condition.

23. On September 19, 2023, at 1:30 p.m., the Defendant's agent, Albert Nance, forced the Plaintiff to come to the physical premises of the Ralph H. Johnson VA Medical Center to do an inspection, in direct violation of the reasonable accommodation that was granted to the Plaintiff to work remotely when hired. The Plaintiff was asked to do inspections of the operating room at the Ralph H. Johnson VA Medical Center. However, because of her post-traumatic stress disorder, those inspections were done before 6:30 a.m. or after 5:30 p.m. To do otherwise, that is, perform inspections during the regular work hours, would trigger the Plaintiff's post-traumatic stress disorder. For example, in an email in December 2023, the Plaintiff complained to Dr. Lake about the conduct of Nance towards the Plaintiff, becoming such that she believed it was causing a hostile work environment.

24. By way of another example of harassment and hostile work environment, on November 7, 2023, the Plaintiff was told by the Defendant's agent, Nance, that she could not take leave under the Federal Medical Leave Act (FMLA), notwithstanding the fact that the Plaintiff's FMLA request was approved by the Human Resources Department at the Ralph H. Johnson VA Medical Center.

25. In furtherance of the harassment and/or hostile work environment, notwithstanding customs and practices that supervisors are not to communicate with employees who are on FMLA leave, the Defendant's agent Nance sent to the Plaintiff an email regarding her performance evaluation, said email stating that she did not have a mid-year performance

evaluation and therefore would not receive an evaluation for that year, all of which were untrue.

26. After returning from approximately 30-days of FMLA leave, that began in November of 2023, because of the consistent and persistent harassment and hostile work environment created by the Defendant's agent Nance, approximately one month later, in January 2024, the Defendant's agent Nance, without cause, downgraded the Plaintiff's performance evaluation from an outstanding to fully successful, even though the Plaintiff's second line supervisor, Dr. Lake, had given the Plaintiff an outstanding performance evaluation.

27. In March of 2024, because of the continued harassment, hostile work environment, and retaliation by the Defendant's employee, Nance, directed towards the Plaintiff, the latter requested a 90-day leave for the purpose of extricating herself from the hostile work environment, harassment, and retaliation on the advice of her psychiatrist. Of those ninety (90) days, the Plaintiff had to take unpaid leave of approximately sixty (60) days, in that the latter did not have enough paid leave or FMLA leave to cover the entire ninety (90) days. Notwithstanding the fact that the Plaintiff was on FMLA and unpaid leave, the Defendant's agent and the Plaintiff's supervisor, Nance, continuously bombarded the Plaintiff with email(s) regarding matters that were not critical in any manner.

28. Upon returning to work on approximately May 24, 2024, the harassment and hostile work environment continued to exist, and the Plaintiff's supervisor, Mr. Nance, became even more forceful in his prohibited conduct against the Plaintiff. The Defendant, notwithstanding the Plaintiff's job description, tried to and did threaten the Plaintiff with disciplinary action if she did not perform the duties that were outside of her position description.

29. From December 2023, the Plaintiff made numerous requests for a transfer to another position so as to avoid being under the direct supervision of the Defendant's agents, Nance and Lake. All of the Plaintiff's requests fell on deaf ears. Although the Plaintiff made numerous requests to Nance and Lake about the status of her request for a transfer, she received no response from either. The Defendant's agents knew that their conduct was causing episodes of post-traumatic stress syndrome events to occur with the Plaintiff.

30. That at all times relevant herein, the Plaintiff complained, by way of email and verbally, to her second line supervisor, Dr. Lake, about the harassment, hostile work environment, and retaliation almost exclusively caused by the conduct of the Plaintiff's first line supervisor, Tyler Nance. On June 15, 2024, the Plaintiff was instructed, in an email, by Dr. Lake not to include her on any of the email exchanges in which the Plaintiff was complaining about the treatment being levied against her by the direct supervisor, Nance.

### FOR A FIRST CAUSE OF ACTION
### (Hostile Work Environment)

31. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

32. Plaintiff alleges that Defendant allowed Plaintiff's first-line supervisor, Albert Nance, to continuously harass Plaintiff, subsequent to the latter engaging in protected activity, notwithstanding the fact that Plaintiff continuously complained to upper-level management about the conduct of Plaintiff's first-line supervisor.

33. As a result of being subjected to a hostile work environment, Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation / Reprisal)

34. The Plaintiff realleges and reincorporates each and every allegation hereinabove set out as if repeated verbatim.

35. After Plaintiff complained about a hostile work environment, her supervisor, Albert Nance, engaged in a course of conduct in close temporal proximity that was designed to retaliate against Plaintiff for complaining of harassment and/or a hostile work environment.

36. As a result of the unlawful violation and/or retaliation against the Plaintiff, in violation of Title VII of the 1964 Civil Rights Act, *et seq.,* and the 1991 Civil Rights Act, as amended, the Plaintiff suffered damages, both punitive, if applicable, in an amount to be proven at trial.

## FOR A THIRD CAUSE OF ACTION
### (Harassment)

37. The Plaintiff realleges and reincorporates each and every allegation hereinabove set out as if repeated verbatim.

38. The Defendant's agent, Nance, continually harassed Plaintiff, even more, after Plaintiff continued to complain to her second-line supervisor about the hostile work environment and ongoing harassment against Plaintiff by Nance.

39. As a result of the unlawful violation and/or harassment against the Plaintiff, in violation of Title VII of the 1964 Civil Rights Act, *et seq.,* and the 1991 Civil Rights Act, as amended, the Plaintiff suffered damages, both punitive, if applicable, in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Retaliatory Harassment)

40. The Plaintiff realleges and reincorporates each and every allegation hereinabove set out as if repeated verbatim.

41. The Defendant's agent, servant, and/or employee, Nance, harassed the Plaintiff in a retaliatory fashion because the former refused to accept and complained of the harassment and hostile work environment, such that the pervasiveness of Nance's conduct caused the Plaintiff to seek and receive mental health care from a health care provider.

42. The conduct as stated hereinabove continued throughout the entire time that Nance was the Plaintiff's supervisor.

43. As a result of the unlawful violation and/or retaliatory harassment against the Plaintiff, in violation of Title VII of the 1964 Civil Rights Act, *et seq.,* and the 1991 Civil Rights Act, as amended, the Plaintiff suffered damages, both punitive, if applicable, in an amount to be proven at trial.

## FOR A FIFTH CAUSE OF ACTION
### (Disparate Treatment)

44. The Plaintiff realleges and reincorporates each and every allegation hereinabove set out as if repeated verbatim.

45. Plaintiff asserts that because the former complained vehemently about the harassment and hostile work environment created by Nance towards the Plaintiff, the latter was treated in a discriminatory manner by Nance while other similarly situated employees as

the Plaintiff, who had not complained of hostile work environment or harassment, were treated differently from the Plaintiff and not in a discriminatory manner.

46. As a result of the unlawful violation and/or disparate treatment against the Plaintiff, in violation of Title VII of the 1964 Civil Rights Act, *et seq.,* and the 1991 Civil Rights Act, as amended, the Plaintiff suffered damages, both punitive, if applicable, in an amount to be proven at trial.

### FOR A SIXTH CAUSE OF ACTION
### (Constructive Demotion)

47. The Plaintiff realleges and reincorporates each and every allegation hereinabove set out as if repeated verbatim.

48. Plaintiff asserts that the conditions under which she worked with Nance as her supervisor were overwhelmingly intolerable, such that no reasonable employee similarly situated could endure in that environment. Plaintiff was forced to, because of the inaction of upper-level management in facilitating a transfer to another position laterally equivalent to a Program Analyst, take a lower-paying job and thereby being constructively demotion.

49. As a result of the unlawful violation and/or constructive demotion against the Plaintiff, in violation of Title VII of the 1964 Civil Rights Act, *et seq.,* and the 1991 Civil Rights Act, as amended, the Plaintiff suffered damages, both punitive, if applicable, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for damages as follows:

a. Compensatory damages, loss wages and benefits;

b.  Punitive damages, if applicable, in an amount to be proven at trial;

c.  Attorney's fees and costs for this suit pursuant to the 1976 Civil Rights Attorney's Fees Act and the 1964 Civil Rights Act, and the 1991 Civil Rights Act, as amended, as well as any other appropriate attorney's fees statute;

d.  Prejudgment interest on all claims;

e.  Injunctive relief;

f.  That the Defendant be ordered to compensate, reimburse, and make whole the Plaintiff, including but not limited to, back pay, front pay with interest, benefits, training, and/or promotion and seniority;

And for such other relief as this Court may deem just, equitable, and proper.

BY:   s/*Edward M. Brown, Esquire*
EDWARD M. BROWN, ESQUIRE
Attorney for the Plaintiff
Federal I.D. No. 1510
P. O. Box 20261
Charleston, SC  29413
(843) 559-9224
(843) 559-9226 (Fax)

Charleston, South Carolina

Dated:  December 3, 2025

---

[i] The senior leadership responsible for the RHJVAMC.